**[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 155.]**

**CITY OF HILLIARD, APPELLEE, *v.* ELFRINK, APPELLANT.**

**[Cite as *Hilliard v. Elfrink*, 1996-Ohio-333.]**

*Criminal law—Operating motor vehicle while under the influence of alcohol—Evidence—Chemical test to determine intoxication not rendered inadmissible by failure to advise accused of statutory right to another test provided by R.C. 4511.19(D)(3).*

———————————

The failure to advise a person chemically tested for determination of the concentration of alcohol in his blood, breath, urine, or other bodily substance that he "may have a physician, a registered nurse, or a qualified technician or chemist of his own choosing administer a chemical test or tests in addition to any administered at the request of a police officer," as required by R.C. 4511.19(D)(3), does not render the results of a police-administered test inadmissible in evidence at trial. (*State v. Myers* [1971], 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245, paragraph one of the syllabus, approved and followed.)

———————————

(No. 95-2440—Submitted October 15, 1996—Decided December 11, 1996.)

CERTIFIED by the Court of Appeals for Franklin County, No. 95APC03-364.

———————————

{¶ 1} According to the arrest report, on September 17, 1994, a Hilliard police officer received a report of a person passed out behind the steering wheel of a parked vehicle. The responding officer discovered defendant-appellant, Brian L. Elfrink, apparently asleep in the parked vehicle. The vehicle's key was in the ignition in the accessory position and the radio was playing. The officer detected the odor of alcohol coming from the vehicle and awoke appellant. After appellant

failed field sobriety tests, the officer placed him under arrest. The arresting officer cited appellant for OMVI and brought him to the police station. Appellant consented to a breath-alcohol test and tested .105 of one gram by weight of alcohol per two hundred ten liters of his breath.

{¶ 2} Appellant was charged with violations of R.C. 4511.19(A)(1) (for operating his vehicle under the influence of alcohol) and of R.C. 4511.19(A)(3) (for operating his vehicle with a concentration of .10 of one gram or more by weight of alcohol per two hundred ten liters of his breath). The arresting officer suspended appellant's driver's license pursuant to the administrative license suspension ("ALS") provisions of R.C. 4511.191, as required by that statute when appellant's breath test revealed that the breath-alcohol concentration exceeded the legal limit of .10.

{¶ 3} Appellant filed a motion to dismiss the charges against him in Franklin County Municipal Court, arguing that, under the Double Jeopardy Clauses of both the Ohio and United States Constitutions, an ALS imposed pursuant to R.C. 4511.191 bars a subsequent prosecution on the underlying OMVI violation. Appellant also filed a motion to suppress the results of the breath-alcohol test because the arresting officer did not advise appellant of the right to an independent test, as required by R.C. 4511.19(D)(3).

{¶ 4} On March 7, 1995, the trial court held a hearing on the motion to dismiss and on the motion to suppress. At the hearing, the parties stipulated that the arresting officer had not informed appellant of the right to an independent test. The trial court overruled both the motion to dismiss and the motion to suppress. Appellant pled no contest on March 20, 1995, and the trial court sentenced appellant on the R.C. 4511.19(A)(3) charge.

{¶ 5} The Court of Appeals for Franklin County affirmed the judgment of the trial court, agreeing with the trial court that double jeopardy principles did not prevent appellant from being prosecuted on the OMVI charges. The court of

appeals also upheld the trial court's ruling that the breath-alcohol results should not be suppressed from evidence for the officer's failure to advise appellant of the right to an independent test.

{¶ 6} The court of appeals, finding its judgments on both issues to be in conflict with the holdings of other courts of appeals, entered an order certifying the conflicts. As to the first issue, double jeopardy, the court of appeals certified its judgment as in conflict with the decision of the Seventh Appellate District in *State v. Gustafson* (June 27, 1995), Mahoning App. No. 94 C.A. 232, unreported. This court determined that a conflict existed, and stayed the briefing schedule on that issue, holding it for the resolution by this court of the pending *Gustafson* case.

{¶ 7} As to the second issue, regarding the failure to advise appellant of the right to an independent test, the court of appeals certified its judgment as in conflict with the decision of the Second Appellate District in *State v. Thurman* (June 28, 1995), Montgomery App. No. 14741, unreported, 1995 WL 386820. This court determined that a conflict exists and ordered the parties to brief this issue. The cause is now before this court.

———————————

*Vorys, Sater, Seymour & Pease, William G. Porter II* and *Susan M. Barrett*, for appellee.

*Judith M. Stevenson*, Franklin County Public Defender, and *John W. Keeling*, Assistant Public Defender, for appellant.

———————————

**ALICE ROBIE RESNICK, J.**

{¶ 8} We affirm the judgment of the court of appeals on the first certified issue (double jeopardy) based on this court's decision in *State v. Gustafson* (1996), 76 Ohio St.3d 425, 668 N.E.2d 435. Therefore, this opinion will address only the second certified issue.

**{¶ 9}** The relevant issue certified for our review is: "[W]hether the failure of authorities to advise a defendant of his right to obtain an independent blood or chemical test pursuant to R.C. 4511.19(D)(3) requires suppression of the test results." For the reasons which follow, we answer this certified issue in the negative and affirm the judgment of the court of appeals.

**{¶ 10}** R.C. 4511.19(D)(3) provides, in part:

"The person tested may have a physician, a registered nurse, or a qualified technician or chemist of his own choosing administer a chemical test or tests in addition to any administered at the request of a police officer, and shall be so advised."

**{¶ 11}** In *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245, this court considered the same issue we consider today. Construing language virtually identical in substance to that contained in current R.C. 4511.19(D)(3) (then numbered R.C. 4511.19[B], 132 Ohio Laws, Part I, 1632-1633), the *Myers* court held at paragraph one of the syllabus: "The failure to advise a person chemically tested for determination of the concentration of alcohol in his blood that he 'may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a police officer,' as required by R.C. 4511.19(B), does not render the results of a police administered test inadmissible in evidence at trial."

**{¶ 12}** In deciding this issue the way it did, the *Myers* court, 26 Ohio St.2d at 196, 55 O.O.2d at 450, 271 N.E.2d at 249-250, first made the following observations:

"It should be noted that here we are not confronted by any question of constitutional magnitude which might place this issue within the purview of the exclusionary rule first enunciated by the United States Supreme Court. See *Mapp*

*v. Ohio* (1961), 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081], and, generally, *State v. Cowans* (1967), 10 Ohio St.2d 96 [39 O.O.2d 97, 227 N.E.2d 201].

"The United States Supreme Court has held that where a defendant refused to consent to a taking of his blood sample for chemical analysis, a blood sample taken over his objection and without his consent was admissible in evidence. In so holding, the court denied the contention that such procedure violated the Fourth, Fifth, Sixth, or the Fourteenth Amendments to the United States Constitution. *Schmerber v. California* (1966), 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908]. See, also, *Breithaupt v. Abram* (1957), 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448].

"Rather than being faced with a constitutional problem in the case at bar, we are confronted with a statutory requirement that the person '*shall* be so advised,' with no *express* sanction provided for the failure of the police officer to do so." (Emphasis *sic*.)

**{¶ 13}** The starting point for analysis of this issue in *Myers* remains our starting point today—the requirement of informing the person being tested that he or she may have an independent test administered is a statutory requirement and is not a constitutional requirement. Since the exclusionary rule is invoked only when violations of constitutional rights are involved, see *Mapp v. Ohio*, *supra*, the exclusionary rule in its traditional form has no application to the circumstances of this case. Although this court in *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32, and in *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, held that a motion to suppress is the proper pretrial procedure for challenging breath-alcohol results, those cases should by no means be interpreted as a general retreat from the well-established principle that suppression of evidence is a remedy normally reserved for alleged violations of constitutional rights.

**{¶ 14}** Black's Law Dictionary (6 Ed.1990) 1014, defines a "motion to suppress" as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment

(search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation etc.), of U.S. Constitution." Moreover, Black's Law Dictionary (6 Ed.1990) 564, defines "exclusionary rule" as a rule which "commands that where evidence has been obtained in violation of the search and seizure protections guaranteed by the U.S. Constitution, the illegally obtained evidence cannot be used at the trial of the defendant." See *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 234, 18 O.O.3d 435, 437, 416 N.E.2d 598, 600 ("In *State v. Myers* \*\*\*, this court enunciated the policy that the exclusionary rule would not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule.").

{¶ 15} Consequently, even though *Kretz* established that a motion to suppress is the proper way to challenge breath-alcohol results, it is crucial to recognize that when such a motion is granted in a *Kretz*-type case, the trial court is actually making what is essentially an evidentiary ruling, and is not applying the exclusionary rule in its customary form. Decisions such as *Kretz* and *French* are a specific narrow departure, for essentially pragmatic reasons, by this court from settled law regarding suppression of evidence, and the principles developed in those cases must be narrowly construed.

{¶ 16} The court in *Myers,* 26 Ohio St.2d at 196, 55 O.O.2d at 450-451, 271 N.E.2d at 250, stated: "[W]e must look to the statutory rule in this state that the reversal of a lower court's conviction on the basis of 'the admission or rejection of any evidence offered against or for the accused' shall not be had 'unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.' R.C. 2945.83. Accordingly, in the absence of a showing of prejudice having accrued to a defendant by the failure to advise him of his right to have an independent test made \*\*\*, the results of a chemical test so administered may not be excluded from evidence. The record before us discloses no prejudice

accruing to appellee from the admission of evidence regarding the chemical test performed; nor does it disclose evidence sufficient to support a finding as a matter of law that this test was improperly administered or its results erroneous.

{¶ 17} "In reaching this result, we are aware that there is no effective leverage available to a defendant which may be employed to compel police officials to advise a suspect as required ***. This was, and is, a matter for the General Assembly. In our view, there is no judicial machinery available to produce the missing sanction."

{¶ 18} *Myers* thus clearly set out this court's position on this issue. This court announced in *Myers* that it would not fashion a sanction for the failure to inform a person being tested by police of the statutory right to an independent test. This court informed the General Assembly that any remedy for the failure to comply with the statutory requirement would have to be supplied by the General Assembly, and that the courts of this state would not devise such a remedy if the General Assembly chose not to respond to this court's invitation.

{¶ 19} Appellant urges that, due to changes the General Assembly has made to the drunk driving statutes, the analysis in *Myers* is of questionable validity today. Appellant points out that, at the time that *Myers* was decided, the chemical test threshold for driving under the influence of alcohol was a blood-alcohol concentration of .15 percent, and when a driver tested at or above that level, there arose a rebuttable presumption of driving under the influence. See *Myers*, 26 Ohio St.2d at 193, 55 O.O.2d at 449, 271 N.E.2d at 248, fn. 2. Appellant further points out that, in the years since the *Myers* court reached its conclusion, the General Assembly has created, in addition to the offense of operating a vehicle under the influence of alcohol (R.C. 4511.19[A][1]), a separate offense of driving with a prohibited concentration of alcohol, in the form of the *per se* offenses of R.C. 4511.19 (A)(2) (blood concentration), 4511.19(A)(3) (breath concentration) and 4511.19(A)(4) (urine concentration). Appellant in essence argues that the existence

of the *per se* offenses means there is now no defense available to a defendant who tests above the legal limit who is unable to establish that the test administered to him or her was inaccurate, so that prejudice resulting from the failure to inform of the statutory right to an independent test can now be inferred in every case where the statutory notification requirement is not complied with. Appellant argues therefore that the prosecution should not be able to use the results obtained through the police-administered test to prove that the defendant had a concentration of alcohol in the blood, breath, or urine that equaled or exceeded the statutory limit when the arresting officer fails to advise of the availability of an independent test.

{¶ 20} We do not accept appellant's reasoning.[1] Although appellant is correct in pointing out that the drunk driving statutes have been amended several times by the General Assembly subsequent to the time of the decision in *Myers*, it is also true that the General Assembly has never supplemented the specific statutory language at issue in this case, relative to the requirement to advise of the right to an independent test, to provide a remedy for failure to comply with the statute. This court in *Myers* unequivocally set forth the position that the courts of this state would not provide a judicially crafted remedy for a failure to advise a suspected drunk driver of the statutory right to an independent test. We see no reason to alter that course, and we adhere to the view expressed in *Myers* that it is up to the General Assembly to provide the sanction. Since the General Assembly has not reacted to

---

1. One court of appeals has addressed a "prejudice" argument similar to the one made by appellant in this case in the following way:

"As to [the] argument that the statutory change from 'presumption' to 'per se' itself creates the prejudice required by *Myers*, under both the former and present law it is clear that the primary purpose of securing an additional test would be to collaterally attack the validity of the police-administered test result. While the change in the law since *Myers* has altered the effect of the test result ***, it has not changed a defendant's ability to attack the validity of a test result. While admittedly subtle, this distinction is not without significance and requires a finding that the availability of the means for a defendant to attack the validity of the chemical test results has not changed since the Ohio Supreme Court's decision in *Myers*." *Toledo v. Mahoney* (May 5, 1995), Lucas App. No. L-94-308, unreported, 1995 WL 258693.

the *Myers* holding, it is evident that the General Assembly has chosen through its inaction not to provide appellant's requested remedy.

{¶ 21} We therefore reaffirm the previous holding of this court, as set out in the first syllabus paragraph of *Myers*, and adapt that syllabus paragraph to track the language of current R.C. 4511.19(D)(3). We hold that the failure to advise a person chemically tested for determination of the concentration of alcohol in his blood, breath, urine, or other bodily substance that he "may have a physician, a registered nurse, or a qualified technician or chemist of his own choosing administer a chemical test or tests in addition to any administered at the request of a police officer," as required by R.C. 4511.19(D)(3), does not render the results of a police-administered test inadmissible in evidence at trial.

{¶ 22} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

—————————————