**The STATE of Ohio**

v.

**SANDS.** ■

Municipal Court of Findlay, Ohio.

No. 97–TRC–7184–A.

Decided Dec. 30, 1997.

*Donald J. Rasmussen,* Assistant City Law Director, for plaintiff.

*Daniel M. Snyder,* for defendant.

REGINALD J. ROUTSON, Judge.

On November 4, 1997, this matter came on for hearing as the result of a motion to suppress evidence and motion to dismiss filed by defendant Hollie R. Sands. The defendant appeared, together with her attorney, Daniel M. Snyder. Donald J. Rasmussen, Assistant City Law Director, appeared on behalf of the state of Ohio.

Before the commencement of the hearing, the parameters of the motion hearing were discussed. It was stipulated by the parties that the court would entertain evidence relating solely to the following issues: (1) the existence of a reasonable and articulable suspicion for stopping the defendant's vehicle, (2) the existence of probable cause to arrest the defendant, and (3) the existence of a violation of the defendant's Fifth Amendment right against self-incrimination. The balance of the defendant's motion relating to violations of the Ohio Administrative Code was resolved prior to hearing.

Upon consideration of the evidence and the arguments of counsel, the court hereby finds as follows.

## STATEMENT OF FACTS

On May 29, 1997, Sergeant William Stidham of the Ohio State Highway Patrol was eastbound on East Main Cross Street near the intersection of Main Street and East Main Cross Street, in the city of Findlay, Hancock County, Ohio. As he pulled up behind a 1989 Mazda vehicle, he observed that the vehicle had no validation sticker or county identification sticker, as required by R.C. 4503.21. Trooper Stidham called in the license plate number and followed the vehicle. Near the intersection of East Main Cross and Central Parkway, Sergeant Stidham activated his pursuit lights and stopped the vehicle. As he approached the driver's side window, he encountered the operator, later identified as Hollie R. Sands. Sands did not have her operator's license with her and, after some difficulty, located the vehicle registration in the glove box. When she presented the vehicle registration to Officer Stidham, he noted that the validation and county identification sticker were still stapled to the documents. It was determined that the vehicle was owned by a passenger, a foreign language student attending the University of Findlay. Upon questioning the defendant, Sergeant Stidham ascertained that she was twenty years of age. During his inquiry, he observed that the defendant had glassy eyes and a moderate odor of alcohol about her person. Sergeant Stidham asked the defendant to accompany him back to the cruiser, where it was determined that the defendant was a licensed driver. Trooper Stidham next asked the defendant whether she would submit to a horizontal gaze nystagmus test. The defendant agreed to the test, which

produced four out of six clues. Based upon his training, these observations led Sergeant Stidham to believe that the defendant might be under the influence of alcohol. Responding to further inquiry, the defendant stated that she had "sipped some beer at Fricker's." Sergeant Stidham then asked the defendant to exit the cruiser and perform field sobriety tests. The defendant performed the walk-and-turn and one-leg-stand tests, which indicated some signs of impairment; however, overall, the defendant performed these tests satisfactorily. Thereafter, Patrolman Akers of the Findlay Police Department arrived with a portable breath-testing machine. This test was administered to the defendant with a result of .056.

Sergeant Stidham placed the defendant under arrest, believing that she might be under the influence of alcohol, or an underage operator having consumed alcohol in violation of R.C. 4511.19(B). At this point, Sergeant Stidham informed the defendant of her *Miranda* rights, and she was taken to the Highway Patrol post and asked to submit to a breath test.

## CONCLUSIONS OF LAW

The defendant raises several constitutional challenges to the officer's conduct. Each of these issues will be addressed separately.

## REASONABLE GROUNDS TO STOP THE VEHICLE

The defendant first argues that Sergeant Stidham was without justification to stop the vehicle she was operating. R.C. 4503.21 clearly prohibits the operation of a vehicle by any person who does not have a current validation and county identification sticker. This information certainly rises above the crest of an articulable and reasonable suspicion to stop a motor vehicle. The officer's ulterior motive, if any, is irrelevant. See *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.

## JUSTIFICATION FOR CONTINUED DETENTION

Defendant next argues that once Sergeant Stidham had sufficient information to cite her for a registration violation, he was without authority to continue his detention. This court disagrees. In *State v. Gustin* (1993), 87 Ohio App.3d 859, 623 N.E.2d 244, the court of appeals held that continued investigation of a stopped motorist may occur if additional information is acquired during the stop that would lead a reasonable officer to believe that the defendant may have operated a motor vehicle while under the influence of alcohol. Here, Sergeant Stidham testified that he observed the defendant with glassy eyes and a moderate odor of alcohol about her person. This information certainly justified

his continued detention and exploration of these issues. See, also, *State v. Blackburn* (1996), 115 Ohio App.3d 678, 685 N.E.2d 1327. Defendant's reference to *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, is helpful but not dispositive. The court agrees with the defendant's basic contention that an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. However, this court does not agree with the defendant's additional contention that once Sergeant Stidham learned that the validation stickers were in the vehicle he had to cease his inquiry. The court finds that Sergeant Stidham's further investigative actions were warranted based upon the additional information he developed during the course of his encounter with the defendant.

## PROBABLE CAUSE TO ARREST

■ Defendant next argues that Sergeant Stidham lacked probable cause to arrest her for a violation of R.C. 4511.19. If the court were to view this incident in a vacuum, the court might be inclined to agree with the defendant's assessment. Clearly, there is a question whether Sergeant Stidham's observations rose to the level of probable cause to arrest the defendant for the operation of a motor vehicle while under the influence of alcohol pursuant to R.C. 4511.19(A). The information gleaned by the officer would certainly give rise to probable cause to arrest the defendant for a violation of R.C. 4511.19(B)(2), based upon his knowledge of her age and other observations. Moreover, a finding of probable cause for a violation of R.C. 4511.19(B) requires that the officer have reasonable and articulable facts concerning operation and age, and enough evidence of alcohol consumption, to lead a reasonable person to believe that the operator would test no less than two tenths of one gram of alcohol per two hundred ten liters of breath. See R.C. 4511.19(B)(2).

## CUSTODIAL INTERROGATION

■ Defendant next argues that her admission of alcohol consumption must be suppressed because this incriminating information was obtained by Sergeant Stidham when the defendant was clearly in custody. The fact that a defendant was detained does not necessarily mean that she was in custody for purposes of Fifth Amendment analysis. As this court has previously stated, Sergeant Stidham possessed reasonable grounds to continue to detain the defendant and investigate whether she violated any law regarding the operation of a vehicle and alcohol consumption. In *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317, the Supreme Court has held that the detention of a motorist during a roadside traffic stop is not tantamount to custody. However, in this case, Sergeant Stidham did more than simply engage in a roadside inquiry

when he requested that the defendant return to the cruiser with him. This request blurs the common understanding of a roadside stop, and requires the court to ascertain whether reasonable persons would conclude that they were in custody at the time for purposes of Fifth Amendment analysis. Upon consideration of all the evidence, this court finds that no reasonable persons could conclude that they were in custody, given the fact that the parties were in the front seat of the vehicle and the officer was engaged in a continuing investigation concerning the defendant's sobriety and validity to drive. See *State v. Warrell* (1987), 41 Ohio App.3d 286, 534 N.E.2d 1237. Therefore, this court finds that the defendant was not in custody for purposes of the. Fifth Amendment, and was therefore not entitled to receive *Miranda* warnings prior to any questioning.

## DUE PROCESS ARGUMENT

Finally, the defendant asserts that the test result obtained in this case was coerced because the defendant was threatened with the loss of her operator's license, not sanctioned by R.C. 4511.191.

After the defendant was transported to the Highway Patrol post, she was read the top portion of BMV Form 2255, as required by R.C. 4511.191(C)(1). In pertinent part, that statute states that "[a]ny person under arrest for operating a vehicle * * * with a prohibited concentration of alcohol in the blood, breath, or urine shall be advised * * * of * * * (a) [t]he consequences * * * of the person's refusal to submit * * *." This form does not indicate that violations of R.C. 4511.19(B) are excluded from coverage.

At this point, the defendant had two options. First, she could have refused the officer's request, subjecting her to an administrative license suspension ("ALS"). Second, she could have submitted to the test as he requested. By submitting to the test, one of several results was possible. She could have tested over the prohibited limit for a violation of R.C. 4511.19(A)(3) and been subject to an ALS. As in the case here, she could have submitted to the test and produced a result above .02 but less than .10, and not have been subject to an ALS. Finally, she could have submitted to the test and achieved a result below .02, neither subjecting her to a suspension nor most likely an arrest.

However, R.C. 4511.191(H)(1)(d)(ii) states in pertinent part that at an ALS appeal hearing, the suspension will be sustained by the court if it is established that the chemical test result was in excess of .10, the prohibited limit for a violation of R.C. 4511.19(A)(3). Reading these statutes together, it is clear that the legislature did not intend that R.C. 4511.191 would apply to violations of R.C. 4511.19(B). Therefore, the defendant is correct in stating that the advice provided to the defendant at the time of her arrest was misleading. This

incongruity in the law clearly puts any police officer on the horns of a dilemma. No officer can accurately predict the exact test result of any subject. If an officer fails to advise a defendant of the possible consequences for refusing or achieving a prohibited test result, the officer has intentionally violated the statutory mandate, and possibly misled the defendant into believing that there would be no punishment if the individual tested over .10. If the officer follows the statutes and provides the subject with the advice set forth on BMV Form 2255 and the test result is below .10, the officer may have obtained a test based upon misleading information.

By faithfully following this statutory framework, an officer could mislead a defendant; however, this does not rise to the level of a constitutional violation, since the officer did not engage in intentional conduct and reasonably relied upon the statute. See *Illinois v. Krull* (1987), 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364; see, *e.g., State v. Wilmoth* (1986), 22 Ohio St.3d 251, 22 OBR 427, 490 N.E.2d 1236. Moreover, the Supreme Court of Ohio has ruled repeatedly that statutory violations of the law generally do not require the suppression of evidence. *Hilliard v. Elfrink* (1996), 77 Ohio St.3d 155, 672 N.E.2d 166. This circumstance must be remedied; however, the defendant's argument is not with the court but with the Ohio General Assembly.

Based upon the foregoing, the court finds that the defendant has not been treated so unfairly as to be denied due process of law.

## CONCLUSION

Based upon all the foregoing, the court finds that the defendant's motion to suppress is not well taken and hereby OVERRULES same.

Further, the court has already ruled on the defendant's motion to dismiss in a prior entry.

This matter is ordered set for trial.

*Motion denied.*