OPINION
This case is before us on the appeal of Brian Hoskins from a conviction for driving under the influence of alcohol (DUI). The conviction followed the trial court's denial of Hoskins' motion to suppress. Subsequently, Brian pled no contest to the DUI charge and was found guilty. He was then sentenced to a $500 fine, 30 days in jail (with 27 days suspended), and a license suspension of 180 days.
In support of his appeal, Brian presents the following assignments of error:
 I. By denying the motion to suppress the statement, the trial court violated Appellant's rights under the Fourth Amendment of the Constitution, because the statement was made after the arrest and in response to interrogation, and Appellant was never advised of his Miranda warnings.
 II. The trial court erred when it refused to suppress the evidence because the State failed to meet its burden of proving that the officer had probable cause to believe that Appellant was driving under the influence.
After reviewing the record, we find the assignments of error without merit. Accordingly, the conviction will be affirmed.
 I
The arresting officer, Deputy Bozart of the Darke County Sheriff's Office, was the only witness at the suppression hearing. Bozart gave the following account of the events giving rise to Brian Hoskins' arrest.
On September 8, 2000, at around 3:30 a.m., Bozart was dispatched to a hit-skip accident. When he arrived at the scene, no vehicles were present. However, Bozart saw evidence of an accident, including debris, a skid mark, and tire tracks that went on and off the roadway. Bozart saw a spot where the vehicle appeared to have come back on the roadway, leaving a trail of antifreeze. As a result, Bozart followed the antifreeze trail for about a mile, to 3775 Middle Drive. At that address, he saw a black pickup truck in the driveway that appeared to have been overturned or rolled. The top of the truck was caved in, the right side had heavy damage, and two tires were almost off the rims. Bozart was concerned that the operator had injuries, so he approached the truck. However, two large German Shepard dogs ran toward him, barking, and he could not get near the truck.
Bozart then went to the front of the house and knocked on the door. However, he did not see anyone. As a result, Bozart went around the back of the house. The back door was open and he saw muddy footprints going down the hallway. Bozart noticed something red, which looked like blood, on the door handle and also on the door. Consequently, he assumed that someone was injured. Bozart announced his presence and identified himself as a police officer, but no one responded. Even before Bozart saw blood, he had called for the rescue squad.
About that time, Bozart's sergeant arrived on the scene. Brian Hoskins' father also arrived and indicated that his son lived at the house. Mr. Hoskins additionally told Bozart that the damaged truck was titled in his own (the father's) name. Subsequently, the officers went with Mr. Hoskins into the house, but could not find Brian. All three men then went outside and checked the perimeter of the house. However, they still could not find Brian. They knocked on the garage doors, but could not get any response. About five minutes later, Brian finally came to the garage door. In the meantime, the officers and Mr. Hoskins had been knocking on the garage door and yelling. They could not get in the garage because the door was locked.
When Brian came to the garage door, he looked tired. He also had cuts on his hands in the area of his thumb. Upon checking Brian for injuries, Bozart smelled a strong odor of alcohol. By that time, the rescue squad had arrived and Bozart stepped aside so they could treat Brian. However, Brian refused treatment. After the rescue squad finished, Bozart asked Brian if he had consumed any alcoholic beverages. Brian said he had consumed four beers. Next, Bozart asked if the consumption was before or after Brian got home. Brian replied that the consumption was before he drove home. Brian also acknowledged being the operator of the truck. During this discussion, Brian told his father several times that he could not believe he had wrecked the truck.
By this time, the rescue squad had left and the four men had walked into the garage. Bozart explained to Brian that he was going to perform field sobriety tests. Bozart had graduated from the police academy about seven months before Brian's arrest and had received instruction in field sobriety tests during basic police training. He was told how to perform each tests, what to look for, and what the object of the tests was. Before the night in question, Bozart had made about five DUI arrests.
The first test performed was the horizontal gaze nystagmus (HGN) test. When Bozart gave Brian the HGN test, he did it as he had been taught at the academy. First, he checked the pupils and did not find any irregularities. Next, Bozart checked both eyes using his right index finger. He found a lack of smooth pursuit in both eyes. The next thing he checked was onset of nystagmus prior to 45 degrees. What this tests is whether the eyes are capable of staying in a smooth line with the finger as it moves 45 degrees from the center of the nose. At about 30 to 35 degrees, nystagmus occurred in both eyes. Bozart also found nystagmus in the final part of the HGN test, i.e., when he checked for nystagmus at maximum deviation.
Bozart then conducted the finger-to-nose test. On this test, Brian performed the test correctly three times on the right side, but overcompensated two of three times on the left side. The next test was the one leg stand, which Brian was able to perform correctly. Finally, the "walk-and-turn," or balance test was given. On this test, Brian was supposed to take nine steps, heel to toe, while counting out loud. At the end of the ninth step, Brian was supposed to pivot and then take nine steps back, heel to toe, while counting out loud. During this test, Brian left about a two inch gap between his heel and toe, and also took a tenth step. He stayed on the line while walking, but left a big gap between his steps.
Following the tests, Bozart told Brian that he was going to be placed under arrest for operating a motor vehicle under the influence of alcohol. The basis for the arrest was the strong odor of alcohol on Brian and his performance on the field sobriety tests. Bozart then took Brian to the sheriff's office and explained his rights. At that time, Brian refused to take a blood alcohol test.
During cross-examination, Bozart indicated that he lacked special certification on the HGN test and could not rely on it. However, he also said that Brian did not do well on two of the three other sobriety tests. According to Bozart, poor performance on one sobriety test is enough to indicate that someone is under the influence of alcohol.
In the motion to suppress, Brian asked the court to suppress all observations of the police officers, due to lack of probable cause. Additionally, Brian asked for suppression of any statements he made before being given Miranda warnings. After hearing the evidence, the trial court found that Deputy Bozart's observations and receipt of statements before giving Miranda rights were lawful. Accordingly, the motion to suppress was denied. As we indicated, the denial was followed by Brian's no contest plea to the DUI charge. In exchange, the State dismissed an additional charge of failing to report an accident.
In the first assignment of error, Brian claims that Deputy Bozart should have given Miranda warnings before asking whether Brian had been drinking. Since no warnings were given, Brian believes the trial court erred in refusing to suppress his statements about drinking. We disagree.
Custody means being "`taken into custody or otherwise deprived of * * * freedom of action in any significant way.'" State v. Cavins (Dec, 30, 1999), Montgomery App. No. 17962, 1999 WL 1267021, p. 4, quoting Mirandav. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. In evaluating this issue, we look at the "totality of the objective circumstances surrounding the interrogation." State v. Funderburg (Dec. 4, 1998), Clark App. No. 98 CA 6, unreported, 1998 WL 833762, p. 3, citing Stansbury v. California (1994), 511 U.S. 318, 114 S.Ct. 1526,128 L.Ed.2d 293. In this regard, "[t]he relevant inquiry is what a reasonable person in the suspect's shoes would have understood his situation to be."Id.
After reviewing the facts, we do not think that a reasonable person in Brian's shoes would have felt he was in custody. At the time the questioning occurred, Deputy Bozart was simply trying to investigate the accident and did nothing to suggest to Brian that he was in custody or was deprived of freedom in any significant way. Consequently, the first assignment of error is without merit and is overruled.
 II
In the second assignment of error, Brian contends that Deputy Bozart lacked probable cause to believe that he was driving under the influence. However, whether probable cause existed to arrest Brian is irrelevant, as no evidence was uncovered after his arrest that would be subject to exclusion. As we mentioned earlier, Brian refused to take a blood alcohol content examination at the police station, and the rest of the items being contested were the subject of pre-arrest proceedings. Therefore, even if the trial court felt that Deputy Bozart lacked probable cause for the arrest, there was nothing for the court to suppress.
What Brian could have raised before and during trial, through liminal motions, was the weight to be given the field sobriety tests, due to alleged defects in their administration. At trial, Brian could also have argued, as an evidentiary matter, that the evidence was insufficient to support a conviction because he passed the field sobriety tests. However, he did not do this. Instead, he filed a suppression motion and attempted to have the trial court suppress all statements and observations based on lack of probable cause for the arrest. After the motion was denied, Brian then pled no contest and filed this appeal, again asserting that the arrest was not based on probable cause.
The Ohio Supreme Court has recognized that a pretrial motion in limine
is the functional equivalent of a suppression motion "where it `renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.'" City of Defiance v. Kretz (1991), 60 Ohio St.3d 1, 4, citing State v. Davidson (1985), 17 Ohio St.3d 132. Consequently, the court held in Kretz that a pretrial motion to suppress was the correct procedure for challenging breathalyzer tests, and that a no contest plea did not waive the defendant's appeal from an adverse ruling on the motion. 60 Ohio St.3d at 5. Subsequently, however, the court stressed that Kretz should not be taken as a retreat from the established principle that suppression of evidence is a remedy "normally reserved for alleged violations of constitutional rights." Hilliard v. Elfrink
(1996), 77 Ohio St.3d 155 . Justice Resnick noted in Hilliard:
 Black's Law Dictionary (6 Ed. 1990) 1014, defines a "motion to suppress" as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation etc.), of U.S. Constitution." Moreover, Black's Law Dictionary (6 Ed. 1990) 564, defines "exclusionary rule" as a rule which "commands that where evidence has been obtained in violation of the search and seizure protections guaranteed by the U.S. Constitution, the illegally obtained evidence cannot be used at the trial of the defendant." * * *
 Consequently, even though Kretz established that a motion to suppress is the proper way to challenge breath-alcohol results, it is crucial to recognize that when such a motion is granted in a Kretz-type case, the trial court is actually making what is essentially an evidentiary ruling, and is not applying the exclusionary rule in its customary form. Decisions such as Kretz * * * are a specific narrow departure, for essentially pragmatic reasons, by this court from settled law regarding suppression of evidence, and the principles developed in those cases must be narrowly construed.
Id. at 158.
In State v. Engle (1996), 74 Ohio St.3d 525, Justice Resnick also noted that because motions in limine are "tentative and precautionary," a plea of no contest and an immediate appeal do not serve judicial economy.Id. at 529 (Resnick, concurring). The reason for this is that the plea deprives the appellate court of a complete record. Id. Further, as Justice Resnick pointed out, the trial court can change its tentative liminal ruling upon renewed objection, and the jury may acquit the defendant despite the court's ruling on the motion. Therefore, judicial economy is better served by presenting these motions at trial. Id. Likewise, in the present case, while Brian's objections were not waived, this matter would have been better presented as a liminal motion, based on the weight, if any, to be given to Deputy Bozart's tests and observations.
However, even if we assumed for the sake of argument that Brian's arrest was unlawful and that suppression was warranted, the trial court would still have had nothing to suppress. As we said, the observations and Brian's statements all occurred before Brian was arrested.
According to Brian, Bozart's failure to be specially certified in the use of the HGN test means that Bozart did not have probable cause for the arrest. Again, this may have been an evidentiary issue, but the issue of probable cause for the arrest is irrelevant.
We do note that in State v. Homan (2000), 89 Ohio St.3d 421, the Ohio Supreme Court said that:
 [i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures.
Id. at paragraph one of the syllabus. We fail to understand why the Ohio Supreme Court was concerned in Homan with the probable cause issue, since no evidence that remained subject to suppression was gained by the police after the defendant's arrest.
Specifically, the lower court opinion in Homan indicates that a breathalyzer test was administered to the defendant at a highway patrol post after her arrest. See State v. Homan (May 14, 1999), Erie App. No. E-97-100, unreported, 1999 WL 300229, p. 1, affirmed (2000),89 Ohio St.3d 421. However, the test result was suppressed before trial because the highway patrol did not keep a record of failed calibrations. See 1999 WL 3200229 at p. 2. The State did not appeal this issue, probably because the defendant was subsequently found guilty of driving under the influence of alcohol. Id. at 4.
In Homan, the defendant moved to suppress all evidence the State had gathered as a result of an alleged unlawful stop, arrest, and detention. In this regard, the motion was based on lack of reasonable and articulable suspicion to stop and/or no probable cause for arrest. Id. at 1. Among other things, the defendant claimed that the officer lacked probable cause to arrest because the sobriety tests were unreliable and were not administered in accordance with standardized methods. Id. at 2.
As we mentioned, the trial court in Homan did suppress the results of the breathalyzer test administered after the arrest. The remaining evidence (sobriety test results, observations of the highway patrol officer, and the results of a portable breathalyzer test) was gathered before the arrest. Id. However, the trial court refused to suppress the remaining evidence, because it found both a reasonable basis for the stop and probable cause for the arrest. Id. After trial, the defendant appealed, claiming that the officer lacked probable cause to arrest, because he did not properly administer the field sobriety tests.
Despite the fact that no post-arrest evidence was left to suppress, the Sixth District Court of Appeals considered the issue in the probable cause context. In this regard, the Sixth District found that some sobriety tests should have been suppressed. However, the Sixth District also found probable cause established by other evidence, including the defendant's appearance, admissions about drinking, and erratic driving.Id. at 8.
Subsequently, when the case was appealed to the Ohio Supreme Court, the Supreme Court also focused on "probable cause." The Court first agreed with the Sixth District that the tests were not properly administered.89 Ohio St.3d at 425. Then, the Court went on to establish a rule of "strict compliance" for field sobriety tests. Id. at 426-27. Ultimately, the Court found that the officer had probable cause for the arrest, based on his observations of the defendant's appearance and erratic driving. An additional factor was the defendant's admission that she had been drinking. Id. at 427.
Instead of "probable cause," the real issue in Homan was an evidentiary matter, i.e., whether the field sobriety test results should be excluded from evidence or limited in weight because the tests were not reliably administered. 89 Ohio St.3d at 424. Justice Lundberg Stratton focused on this idea in dissent, noting that field sobriety tests are neither constitutionally nor statutorily mandated, but are merely procedures established by the National Highway Traffic Safety Administration. As such, the tests are "only evidentiary tools." Id. at 429 (Lundberg Stratton, concurring in part and dissenting in part). Therefore, according to Lundberg Stratton, substantial compliance with testing methods should affect the evidentiary value of the tests, but should not cause their exclusion. Id.
As we mentioned earlier, Brian elicited information on cross-examination that Bozart was not specially certified in HGN and was not entitled to rely on his HGN observations. Bozart also testified that the HGN training he received at the police academy did not comply with National Highway Traffic Safety Administration standards. Accordingly, under Homan, the HGN test results would have been excluded from evidence at trial.
However, even conceding this fact, the remaining evidence would have been admissible to establish that Brian should be convicted of driving under the influence of alcohol. Specifically, the jury could have heard evidence about the strong odor of alcohol and about Brian's admission of having consumed four beers before driving. Moreover, in view of the state of the pickup truck, there was certainly evidence of erratic driving. As an additional point, no issue exists concerning Bozart's administration of the other three sobriety tests. Bozart specifically testified that his training on these tests met National Highway Traffic Safety Administration standards, and there was no indication that he incorrectly performed the tests.
The defense claims that Brian performed adequately on the field sobriety tests. However, Deputy Bozart felt otherwise, stating that Brian did poorly on two of the three remaining field sobriety tests. If the case had proceeded to trial, this would simply have been an issue for the trier of fact to resolve.
Accordingly, since probable cause for the arrest was irrelevant under the circumstances of this case, the second assignment of error is without merit and is overruled.
Based on the preceding discussion, both assignments of error are overruled and the judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.