The STATE of Ohio, Appellant,

v.

RAINS, Appellee.

[Cite as *State v. Rains* (1999), 135 Ohio App.3d 547.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–98–016.

Decided Jan. 29, 1999.

548

*William R. Swigart,* Fulton County Prosecuting Attorney, and *Orly Ahroni,* Assistant Prosecuting Attorney, for appellant.

*Gregory L. VanGunten,* for appellee.

SHERCK, Judge.

This is a state's appeal from a suppression order granted by the Fulton County Court of Common Pleas to a defendant accused of aggravated vehicular assault. Because we conclude that the trial court properly suppressed the results of appellee's blood-alcohol content test, we affirm.

Appellee, Darrell L. Rains, was injured at a Fulton County intersection when he disregarded a stop sign and struck another vehicle. He was transported to the Fulton County Health Center for emergency treatment.

As part of appellee's treatment at the health center, a blood sample was drawn and tested for, among other things, blood-alcohol content. As appellee's blood was being analyzed, a sheriff's deputy obtained from appellee a signed release allowing the deputy to receive the results of appellee's blood test. Appellee's blood-alcohol content test results were above the legal limit.

Appellee was charged with driving under the influence of alcohol and driving with a prohibited blood-alcohol content in violation of R.C. 4511.19(A)(1) and (A)(2), respectively; he was also charged with violating R.C. 2903.08, aggravated vehicular assault. Appellee pled not guilty and moved to suppress the results of his blood-alcohol test, arguing that the diagnostic tests performed by the health center were not in substantial compliance with numerous Ohio Department of Health ("ODOH") regulations as required by law.

At the suppression hearing, Fulton County Health Center employees testified that neither they nor the laboratory was certified by the ODOH. In fact, the health center's laboratory manager testified that facility officials made a conscious decision not to seek state certification because of a desire to remain a "clinical" as opposed to a "forensic" laboratory. As a result, the Fulton County Health Center did not follow numerous ODOH regulations concerning forensic protocol. In addition, the blood samples were neither sealed nor refrigerated as required by Ohio Adm.Code 3701–53–05(F), the laboratory had no written protocol manual as required by Ohio Adm.Code 3701–53–06(C), blood samples were not retained for a year as required by Ohio Adm.Code 3701–53–06(A) (appellee's was discarded after a week), the equipment used to test appellee's blood sample was not calibrated on the schedule required by Ohio Adm.Code 3701–53–04(D), the calibration solution that was used was not independently analyzed or otherwise approved by the ODOH pursuant to Ohio Adm.Code 3701–53–04(A)(1), and the calibration solution was not retained for subsequent verification in conformity with Ohio Adm.Code 3701–53–04. Nevertheless, the health clinic's laboratory manager was of the opinion that the test performed on appellee's blood was in "substantial compliance" with the administrative rules.

At the conclusion of the hearing, the state argued that the Fulton County Health Center's testing procedures were in substantial compliance with the ODOH regulations. Alternatively, the state argued that appellee failed to prove he was prejudiced by the techniques employed.

Appellee responded by asserting that not only was there no substantial compliance with the regulations, there was virtually no compliance. With respect to the issue of prejudice, appellee argued that destruction of his blood sample and the calibration solution made it impossible to replicate the test. Denying appellee the ability to verify the state's scientific evidence is fundamentally unfair,

according to appellee, and, therefore, a violation of due process. In this circumstance, according to appellee, prejudice is presumed.

The trial court found the test procedure utilized on appellee's blood sample was not in substantial compliance with the ODOH regulations and ordered the test results suppressed. From this order, the state now brings this appeal setting forth the following four assignments of error:

"I. The trial court erred in suppressing appellee's blood-alcohol test results since the separation of powers issue does not apply to the facts of this case.

"II. The trial court erred in finding that the state has not shown substantial compliance with the Ohio Department of Health Regulations.

"III. The trial court erred in finding that appellee had been prejudiced by his inability to conduct an independent test of his blood sample.

"V. The trial court abused its discretion in not allowing the state to present expert testimony regarding appellee's blood-alcohol test."

I

We will discuss appellant's first three assignments of error together. Initially, appellant contends that the "separation of powers" issue is inapplicable to this case. The "separation of powers" issue originates from appellee's trial argument that the General Assembly delegated its legislative power to the ODOH and, pursuant to that delegation, the regulations developed by the department concerning alcohol testing carry the weight of law. The trial court in its suppression decision characterized the ODOH regulations as a "bright line" test entitled to great deference.

Appellant maintains that establishing the ODOH regulations as a "bright line" requires strict compliance. This, according to appellant, is an erroneous standard, as no more than substantial compliance with the regulation is required. Moreover, appellant argues, even that measure of regard for the regulations is required only for the *per se* violation, R.C. 4511.19(A)(2). Here, appellee is also charged with R.C. 4511.19(A)(1) and R.C. 2903.08 violations. For these offenses, appellant insists, a disregard of the health regulations goes to weight rather than admissibility.

R.C. 4511.19(A)(2), (3), and (4) are strict liability statutes. *State v. Cleary* (1986), 22 Ohio St.3d 198, 199, 22 OBR 351, 351–352, 490 N.E.2d 574, 575. The *sine qua non* of a violation is the admission of a chemical test that establishes the alcohol concentration in a body substance of an accused. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34. In order for the result of a chemical test to be admissible on a *per se* charge, it must have been performed in

substantial compliance with the regulations promulgated by the ODOH. These rules are designed to ensure the accuracy of the test instrument. *Id.; State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 462–464, 490 N.E.2d 902, 904–905.

■ Substantial compliance is not literal compliance. *Id.; Sylvania v. Welch* (Oct. 23, 1998), Lucas App. No. L–97–1373, unreported, 1998 WL 735341. It is sufficient that the procedures employed are likely to achieve the same result as that specified in the rule. *Id.; State v. Steele* (1977), 52 Ohio St.2d 187, 192, 6 O.O.3d 418, 421, 370 N.E.2d 740, 743.

The term "bright line" connotes an absolute standard. Although the trial court used the term, it did not employ the ODOH regulations as such. Ultimately, the court concluded that the health center's conscious disregard of the health department rules concerning certification of personnel, calibration of equipment, and retention of samples, " * * * go[es] beyond the pale of 'substantial compliance' " and creates problems concerning the "competency" of the evidence. Indeed, the court concluded, "prejudice" arose in the due process sense. Because the court did not actually employ the "bright line" standard in this case, appellant's argument on this issue is without merit. Accordingly, appellant's first assignment of error is not well taken.

■ Our own analysis of the evidence leads us to conclude that many of the enumerated deviations did not take the Fulton County Health Center procedures outside of substantial compliance. Even though the health center personnel were not certified, all were well qualified in their fields and all had obtained certification from other accreditation organizations. Sealing and refrigerating the blood sample was unnecessary because the technician who drew the sample delivered it within a few minutes to the technician who tested it. Compliance with the manufacturer's instructions for the enzyme assay machine was a reasonable substitute for the daily calibration required by the state regulations. Individually, or together, these deviations, in our view, fall within the range of substantial compliance with the state regulations.

■ More difficult, however, is the premature disposal of both appellee's blood sample and the calibration solution for the enzyme assayer. The failure of the health center to retain these items for the period of time required by the regulations made it impossible to examine the accuracy of the machine upon which the tests were performed or to replicate the test itself. As the trial court pointed out, the purpose of the administrative regulations is not only to ensure the accuracy of testing, but to maintain the evidentiary value of its results. In this latter objective, the health center's failure to preserve appellee's blood sample and the testing device's calibration solution falls outside the parameters of

substantial compliance. Nevertheless, the point that appellant makes, with respect to the applicability of the substantial compliance standard to the offenses that are not *per se,* requires consideration. In certain circumstances, the results of properly administered bodily substance tests that are not in substantial compliance with the rules may be admitted for non-*per se* violations. *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, paragraph one of syllabus; *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130, paragraph two of syllabus. Therefore, while a lack of substantial compliance with the regulations requires suppression of the test results in an R.C. 4511.19(A)(2) *per se* case, the result is not mandated in other instances.

This, however, is not to say that the blood-alcohol test results for the non-*per se* offenses may not be suppressed for other reasons. Even though statutory suppression is narrowly permitted in this area, the traditional exclusionary rule remains vital when evidence is acquired or used in a manner violative of an accused's constitutional rights. *Hilliard v. Elfrink* (1996), 77 Ohio St.3d 155, 158, 672 N.E.2d 166, 168–169.

▇▇▇ In certain circumstances, the failure of the government to preserve evidence that might be expected to play a significant role in a suspect's defense may violate the accused's due process rights guaranteed by the Fifth and Fourteenth Amendments. *California v. Trombetta* (1984), 467 U.S. 479, 488, 104 S.Ct. 2528, 2533–2534, 81 L.Ed.2d 413, 421–422. The state must retain evidence that, before it is destroyed, possesses an apparent exculpatory value and is of such a nature that comparable evidence may not be obtained by other means. *Id.* at 489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422. When evidence is only potentially exculpatory, its destruction does not constitute a due process violation if police act in good faith and the evidence is handled " * * * in accord with their normal practice." *Arizona v. Youngblood* (1988), 488 U.S. 51, 56, 109 S.Ct. 333, 336, 102 L.Ed.2d 281, 288, quoting *Trombetta* and *Killian, infra.*

▇▇ Here, although the blood sample at issue is evidence not obtainable by other means, its exculpatory value is not apparent. The blood sample is only potentially exculpatory. Therefore, to constitute a due process violation, the defendant must demonstrate that in its destruction police did not act in good faith or show that the evidence was not treated in accord with normal practice.

In *Trombetta,* defendants moved to suppress Intoxilyzer results because the state had failed to preserve the accused's original breath samples. The *Trombetta* court concluded that the breath samples at issue were only potentially exculpatory. Because California authorities appeared not to destroy the samples to circumvent disclosure and acted " * * * in good faith and accord with their normal practice * * *," no due process violation was evident. *Trombetta* at 488,

104 S.Ct. at 2533, 81 L.Ed.2d at 422, quoting *Killian v. United States* (1961), 368 U.S. 231, 242, 82 S.Ct. 302, 308–309, 7 L.Ed.2d 256, 264. The *Trombetta* court also noted that the opportunities for Intoxilyzer error were limited to " * * * faulty calibration[s], * * * and operator error," *id.* at 490, 104 S.Ct. at 2534, 81 L.Ed.2d at 423, and that errors from these sources were extremely unlikely given the certification and procedures dictated by the California Department of Health, *id.* at 489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

In the case before us, the trial court concluded that the deputy sheriff who obtained appellee's test results " * * * had time to obtain an independent test [and] chose not to do so * * *." Further, the trial court concluded that the procedures dictated by the Ohio Department of Health were the "normal practice" in this state and had been ignored. Additionally, we note that the failure of the Fulton County Health Center to comply with the administrative rules negates the presumption of operator competency and that the destruction of the enzyme assayer's calibration sample negates the presumption of machine accuracy. Even assuming that the deputy acted in good faith, it is clear that the handling of appellee's blood sample was not in accord with "normal practice." Consequently, the trial court properly determined that appellee's constitutional right to due process of law was violated. Accordingly, appellant's second and third assignments of error are not well taken.

A caveat is in order. We are not saying that every time there is a failure of substantial compliance with the administrative rules, the evidence must be suppressed for all purposes. Here, had the blood sample and the calibration solution not been destroyed, a different result may well have occurred. Alternatively, there would be no argument at all had the deputy sheriff at the hospital merely asked the medical staff to provide him with a forensic sample and treated that sample in conformity with the ODOH rules.

## II

Appellant's remaining assignment of error deals with the trial court's refusal to reopen the suppression hearing to take expert evidence on what constitutes "substantial compliance" with the rules.

The decision of a trial court concerning the conduct of proceedings before the court rests in the court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Booksbaum v. Christian* (App.1936), 21 Ohio Law Abs. 129, 130, 5 O.O. 267, 269, 202 N.E.2d 205, 207; *In re S.* (1995), 102 Ohio App.3d 338, 343, 657 N.E.2d 307, 309–310. An "abuse of discretion" is more than an error of law or of judgment, the term implies that the court's

attitude is unreasonable, arbitrary, or unconscionable.  *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 168, 169, 559 N.E.2d 1301, 1308–1309.

As the trial court noted, given the magnitude of the deviations here, it is unlikely any further testimony would have been useful.  Accordingly, we find no abuse of discretion.  Appellant's final assignment of error is not well taken.  Upon consideration whereof, the judgment of the Fulton County Court of Common Pleas is affirmed.  Costs to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and MELVIN L. RESNICK, J., concur.