OPINION
Appellant, James L. Stewart, Jr., appeals his conviction and sentence. On March 1, 2000, appellant was involved in a fatal automobile accident on Route 534 in Windsor Township. Earlier that evening, appellant was a customer at the Firehouse Bar and Grill in Windsor while Norma Walker was working there. Ms. Walker left the bar with appellant at approximately 1:20 a.m. At around 2:20 a.m., appellant was driving southbound on Route 534 and lost control of the vehicle he was operating. It veered off to the right, struck a culvert and rolled onto its rooftop.
Paramedics arrived on the scene a short time later. Appellant was removed from the vehicle. Ms. Walker had been partially ejected from the vehicle and sustained severe head and neck injuries. She was pronounced dead at the scene.
Appellant was extremely combative and belligerent toward emergency medical personnel and police officers and refused treatment at the scene. Although his injuries were not life threatening, appellant was transported via a Life Flight helicopter to St. Elizabeth Hospital in Youngstown.
Trooper Eric J. Carroll of the Canfield Post of the Ohio State Highway Patrol was dispatched to the hospital to make contact with appellant. Trooper Carroll testified that appellant had glassy, bloodshot eyes and the distinct odor of alcohol on his person.
After appellant was restrained, a trauma team conducted an evaluation on appellant which included a series of x-rays, cat scans and blood tests.
Appellant was subsequently charged with one count of aggravated vehicular homicide with two specifications (driving under the influence and a previous driving under the influence conviction), a felony in the third degree; and one count of involuntary manslaughter with a driving under the influence specification, also a third degree felony.
Appellant filed a motion to suppress the blood and urine test results. After a suppression hearing, the trial court overruled the motion as to suppression of the blood test results and sustained the motion as to the urine test results and excluded the urine test results from trial.
At the conclusion of the jury trial, appellant was found guilty of aggravated vehicular homicide and was found to be under the influence of alcohol as charged in the specification; and guilty of involuntary manslaughter and found to be under the influence of alcohol according to the specification. Appellant was sentenced to three years imprisonment, was ordered to pay restitution and had his driver's license permanently revoked.
Appellant files this appeal asserting five assignments of error. Appellant's first assignment of error is:
 "The trial court erred to the prejudice of the defendant appellant when it denied his motion to suppress the results of the blood test."
Appellant argues that the blood test results were improperly admitted for a number of reasons. Specifically, appellant contends that the sample was drawn more than two hours after the time of the accident; the hospital technician who drew the sample used the incorrect solution to clean appellant's skin prior to obtaining the sample; a serum-only test was done rather than a whole-blood test; and the hospital maintained the sample for only one week and then disposed of it.
"At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses."[1] The appellate court must accept the trial court's factual findings as long as they are supported by competent, credible evidence.[2]
A review of the record reveals that the trial court held that the results of appellant's blood test were admissible for the prosecution of involuntary manslaughter and aggravated vehicular homicide. The trial court correctly noted that substantial compliance with the Ohio Department of Health regulations is only required for a prosecution for driving while under the influence of alcohol in violation of R.C.4511.19(A)(2), (3) or (4).
A distinction has been made in Ohio courts between D.U.I. offenses and involuntary manslaughter/aggravated vehicular homicide offenses.[3]
Proceedings under per se D.U.I. offense are "independent of other criminal proceedings."[4] This court has held that "[d]efects in conducting a blood-alcohol test go to the weight and not the admissibility of the evidence in non-D.U.I. cases."[5] Therefore, a blood test that does not comply with the guidelines set forth in R.C.4511.19 may still be admitted provided a proper foundation for its admission is established.[6]
A review of the transcript in the instant case reveals that the state provided a sufficient foundation for the admission of the blood test results. The attending physician in the emergency room testified that the blood sampling and testing procedure in this case complied with the hospital standards. He testified that the testing device is used and relied upon by numerous hospitals in Northeast Ohio. He further testified that only Betadine swabs are used on the patient's skin before obtaining a sample. Moreover, testimony from the hospital laboratory technician who conducted the blood test confirmed that this test complied with standard hospital procedures.
Appellant notes in his brief and the record reveals that the accident occurred at 2:20 a.m. and the blood sample was taken at 4:15 a.m. Therefore, the blood test in question was performed within two hours after the accident.
Appellant also notes that the test was based on blood serum rather than a whole blood sample. Testimony from the suppression hearing noted that there is no distinction between using blood serum and whole blood samples and it is acceptable practice to conduct a blood test based on a serum sample.
Appellant also contends that because the sample was thrown away after one week, appellant was deprived of his due process rights to have the sample independently tested to challenge the validity of the results. In making its determination that the blood test was admissible, the trial court correctly relied on State v. Rains for the proposition that evidence must be retained by the state only if it has exculpatory value and cannot otherwise be obtained.[7] Moreover, if the evidence only potentially has exculpatory value, its destruction does not violate due process.[8]
Because appellant was charged with involuntary manslaughter and aggravated vehicular homicide and not a D.U.I. offense, strict adherence to Ohio Department of Health guidelines in drawing a blood sample is not required. However, the state provided an adequate foundation for the admission of the blood test and, as such, the blood test results were properly admitted by the trial court. Appellant's first assignment of error is without merit.
Appellant's second assignment of error is:
 "The trial court erred in failing to instruct the jury that appellant could be found guilty of the lesser included offense of vehicular homicide under the charge of involuntary manslaughter."
Appellant argues that the trial court erred in refusing to instruct the jury on vehicular homicide as a lesser offense under the charge of involuntary manslaughter. Appellant provided the court with instructions of a lesser included offense of vehicular homicide as to both charges, the involuntary manslaughter and the aggravated vehicular homicide. The record reveals that the court declined to instruct the jury on vehicular homicide as a lesser offense under the involuntary manslaughter count. The court did instruct the jury on the lesser offense of vehicular homicide under aggravated vehicular homicide.
The Supreme Court of Ohio stated a crime is a lesser included offense if:
 "(i) the offense carries a lesser penalty than the other;
 "(ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed, and
 "(iii) some element of the greater offense is not required to prove the commission of the lesser offense."[9]
The offense of involuntary manslaughter requires proof that the offender caused the death of another as a proximate result of the offender's committing or attempting to commit a felony, or committing or attempting to commit a misdemeanor.[10] Vehicular homicide is defined as negligently causing the death of another while committing or participating in the operation of a motor vehicle.[11]
Analyzing the two offenses under Deem and its progeny, we conclude that vehicular homicide is not a lesser included offense under involuntary manslaughter. Under the second prong of Deem, involuntary manslaughter can be committed without committing vehicular homicide. Vehicular homicide is defined under R.C. 2903.07 as negligently causing the death of another, "while operating or participating in the operation of a motorvehicle." (Emphasis added.) Clearly one could commit involuntary manslaughter without any involvement of a motor vehicle.
Appellant's second assignment of error is without merit.
Appellant's third assignment of error is:
 "The trial court erred to the prejudice of defendant-appellant by allowing impermissible opinion testimony in violaiton (sic) of Evidence Rule 701."
Appellant argues that the trial court erred when it permitted opinion testimony from three of the state's witnesses regarding whether they felt appellant was intoxicated on the night in question. Appellant argues that, as laypersons, none of them should have been permitted to testify regarding their opinion as to whether appellant was intoxicated. Among the state's witnesses were Michael Tackett, a paramedic with the Windsor Fire Department; David DiCarlo, an emergency medical technician (EMT) with the Windsor Fire Department; and Eric Carroll, a Trooper with the Ohio State Highway Patrol.
In reviewing a trial court's decision to admit evidence under Evid. R. 701, an appellate court must apply an abuse of discretion standard.[12]
This court has recognized that, "[s]obriety or lack thereof is commonly recognized by courts to be within the perception of a lay witness."[13]
Moreover, it is also well established that, "a police officer may provide lay testimony under Evid.R. 701 as to his or her opinion concerning a defendant's state of intoxication."[14]
Appellant argues that the state never set the proper foundation before eliciting opinion testimony from any of the three witnesses at issue. Appellant contends that the proper foundation includes establishing that the witness is a trained individual, experienced in viewing intoxicated people. However, that assertion is contrary to Evid.R. 701, which requires only that the lay opinion testimony be rationally based on the perception of the witness. The witness must have first-hand knowledge of the subject of the testimony and the opinion must be one a rational person would apply to the observations.
This court has recognized many times that laypersons can provide adequate opinion testimony as to whether another individual appeared intoxicated.[15] There is no foundational requirement that the witness be a trained individual with any sort of professional experience in dealing with intoxicated persons outside of the witness' own personal knowledge and experience in witnessing the behavior and appearance of intoxicated persons.
Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error is:
 "The trial court erred to the prejudice of defendant-appellant in permitting over defense objection to allowing an expert witness to testify as to legal conclusions."
Appellant argues that the trial court erred in permitting Ashtabula County Coroner, Dr. Robert Malinowski, to testify that he had ruled Normal Walker's death a homicide. Appellant contends that this was highly prejudicial testimony in that it allowed Dr. Malinowski to testify as to a legal conclusion on one of the ultimate issues in the case and that the term "homicide" is in itself prejudicial. Appellant further argues that Dr. Malinowski should only have been permitted to testify as to the cause and manner of Ms. Walker's death including the injuries which led to her death but he should have stopped short from testifying that her death was the result of a homicide. R.C. 313.19, governing the coroner's determination as to the legally accepted cause of death, recognizes the quasi-judicial character of the coroner's duties and reads:
 "The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death." (Emphasis added.)
The Supreme Court of Ohio has noted that, "[t]he coroner's factual determinations concerning the manner, mode and cause of the decedent's death, as expressed in the coroner's report and death certificate, create a nonbinding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary."[16]
This court has previously recognized that, "it is clearly within the expertise of the coroner to give an opinion on whether a death is a homicide."[17]
Homicide is defined as, "the killing of one person by another."[18]
The term itself makes no reference to intention, negligence or accident. A determination by the coroner that a person's death is the result of a homicide does not attach any "criminal responsibility or non-responsibility of any human agency involved in the causal chain."[19]
A review of the record in the instant case reveals that Dr. Malinowski testified concerning the type of injuries sustained by Ms. Walker and that it was his opinion, based on his experience and the examination of Ms. Walker's body, that he "determined that the cause of death were the trauma to the head and neck and chest and that [he] ruled it a homicide."
Testimony regarding the types of injuries sustained and their likely cause is clearly one of the statutory duties placed upon a coroner.[20]
Dr. Malinowski's testimony regarding Ms. Walker's injuries and his determination regarding the ultimate cause of her death was not prejudicial in that it only concluded that Ms. Walker's death was caused by another person, as opposed to suicide and natural causes, and no criminal responsibility was assigned to appellant. Appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error is:
 "The appellant was denied the effective assistance of counsel as defense counsel's actions and omissions at appellant's trial deprived appellant of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution."
Appellant contends that trial counsel "failed to produce relevant fact witnesses on behalf of the appellant" including any individuals who were at the bar to counter evidence that appellant was intoxicated on the night in question and counsel's failure to have appellant take the witness stand in his own defense.
In order to establish a claim for ineffective assistance of counsel, the appellant must prove that counsel's performance was deficient and show that, were it not for counsel's deficiencies, the result of the trial would have been different.[21]
As noted in Strickland, there is a strong presumption that trial counsel's conduct falls within the broad scope of acceptable trial strategy.[22] A reviewing court must be highly deferential to properly licensed Ohio attorneys in their decisions regarding sound trial strategy.[23]
Appellant's contention that his representation was inadequate because counsel did not bring forth fact witnesses from the bar on the evening of the incident to dispute whether appellant appeared intoxicated is without merit. It is clear from the record that trial counsel attempted to show that the incident was simply an accident. Testimony was elicited from Dr. Alfred Staubus for the purpose of disputing appellant's blood-alcohol content at the time of the crash. Any decisions by trial counsel to call further witnesses in an attempt to dispute appellant's intoxication are clearly within the boundaries of professional judgment. Moreover, defense also presented testimony from Douglas Heard, an accident reconstructionist, to raise doubts in the jurors' minds about what may have caused the accident to occur. Clearly, counsel's decisions regarding the calling of witnesses on appellant's behalf were not deficient.
Moreover, appellant argues that it is not clear from the record whether appellant was advised that he could testify on his own behalf. We note that a defendant's constitutional right to testify is contingent upon a timely demand by the defendant.[24] When, however, a defendant acquiesces in counsel's decision not to testify at trial, a defendant cannot later assert that his right to testify at trial has been violated. As with any other constitutional right, the right to testify may be waived. Of course, a defendant has the right to overrule his counsel's wishes and may, at his choosing, take the stand in his own behalf.
We note that in the case sub judice, appellant fails to point to any credible evidence or to any overt action on his part to bring to the trial court's attention appellant's desire to testify. Therefore, appellant has not demonstrated that he was denied effective assistance of counsel. His fifth assignment of error is without merit.
The judgment of the trial court is affirmed.
DONALD R. FORD, J., ROBERT A. NADER, J., concur.
[1] State v. Ready (2001), 143 Ohio App.3d 748, 756 citing State v.Mills (1992), 62 Ohio St.3d 357, 366.
[2] Id.
[3] State v. Shulte (Oct. 25, 1996), 11th Dist. No. 94-L-186, 1996 WL 660880.
[4] Id.
[5] State v. Harrison (Dec. 19, 1997), 11th Dist. No. 96-P-0240, 1997 Ohio App. LEXIS 5719, at *12, quoting Shulte.
[6] State v. Shulte, at *7.
[7] State v. Rains (1999) 135 Ohio App.3d 547, 553 citing Californiav. Trombetta (1984), 467 U.S. 479, and Arizona v. Youngblood (1988),488 U.S. 51.
[8] Id.
[9] State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
[10] R.C. 2903.04.
[11] R.C. 2903.07.
[12] Urbana ex rel. Newlin v. Downing (1989), 43 Ohio St.3d 109.
[13] In re Litterst (June 26, 1998), 11th Dist. Nos. 97-L-135 and 97-L-136, 1998 Ohio App. LEXIS 2939, at *14.
[14] Id.
[15] State v. Holland (Dec. 17, 1999), 11th Dist. No. 98-P-0066, 1999 Ohio App. LEXIS 6143.
[16] Vargo v. Travelers Ins. Co. (1987), 34 Ohio St.3d 27, paragraph one of the syllabus.
[17] State v. Simpson (Sept. 30, 1994), 11th Dist. No. 93-L-014, 1994 Ohio App. LEXIS 4472, at *21 citing State v. Harrison (May 12, 1993), 1st Dist. No. C-920422, 1993 Ohio App. LEXIS 2446.
[18] Black's Law Dictionary (7th Ed. 1999) 589.
[19] State v. Cousin (1982), 5 Ohio App.3d 32, 35.
[20] See R.C. 313.17 and R.C. 313.19.
[21] State v. Bradley (1989), 42 Ohio St.3d 136, citing Strickland v.Washington (1984), 466 U.S. 668.
[22] Strickland at 694-695.
[23] State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156.
[24] State v. Jones (Sept. 30, 1993), 8th Dist. No. 63836, 1993 Ohio App. LEXIS 4659.