[Cite as *State v. Wolford-Lee*, 2018-Ohio-5064.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO


STATE OF OHIO,                          :          **O P I N I O N**

        Plaintiff-Appellee,          :

                                     **CASE NOS. 2017-L-122**

  - vs -                          :                          **2017-L-123**
                                        **2017-L-124**

VIRGINIA WOLFORD-LEE, et al.,          :                          **2017-L-125**

        Defendants-Appellants.          :


Criminal Appeals from the Painesville Municipal Court, Case Nos. 2017 CRB 00155 A&B, 2017 CRB 00156 A&B, 2017 CRB 00318 A&B, and 2017 CRB 00319 A&B.

Judgment:  Affirmed.


*J. Jeffrey Holland* and *Danamarie Kristyna Pannella*, Holland & Muirden, 1343 Sharon-Copley Road, P.O. Box 345, Sharon Center, OH  44274 (For Plaintiff-Appellee).

*Gregory Charles Sasse*, Gregory C. Sasse, LLC, 6642 Silvermound Drive, P.O. Box 941, Mentor, OH  44060 (For Defendants-Appellants).


THOMAS R. WRIGHT, P.J.


{¶1}    Appellants, Tom Brown, Judith Brown, Ellen Distler, and Virginia Wolford-Lee, appeal their 24 convictions for cruelty against companion animals following a jury trial.  We affirm.

**{¶2}** Tom and Judith Brown are the owners of Caroline's Kids Pet Rescue, a cat rescue shelter in Concord, Ohio. Ellen Distler and Virginia Wolford-Lee work at the shelter.

**{¶3}** In November 2016, Megan Moran delivered a cat diagnosed with feline leukemia, which she received from a woman in Kentucky, to Caroline's. Megan is a cat owner and had been a volunteer for a cat handling service for five years. Upon delivering this cat to Caroline's and viewing the interior of the shelter, she was very concerned about the conditions she saw, including the commingling of sick cats with healthy ones, mucus-covered walls, and overflowing litter boxes. Upon returning home, Megan submitted a complaint to the Lake County Humane Society (LCHS) through its website.

**{¶4}** In response, the LCHS visited the cat shelter to investigate. Upon entering the home converted into a cat shelter, agent Leanne Pike was also very concerned about the conditions as well as the cats residing there. She recalls seeing sick cats with mucus-covered faces, cats unable to close their mouths, one lying in its own feces, and one that appeared "half dead." Pike subsequently obtained several search warrants and returned to Caroline's with a veterinarian and a veterinarian technician. They eventually seized 157 live cats needing immediate medical care and four dead ones. After the seizure, 109 cats remained at the shelter.

**{¶5}** Tom Brown, Judith Brown, Ellen Distler, and Virginia Wolford-Lee were subsequently charged via identical complaints with 24 counts of cruelty against companion animals and another count, later dismissed. The LCHS designated Attorney DanaMarie Pannella to prosecute.

{¶6} The Browns, Distler, and Wolford-Lee were represented by the same attorney, who presented a joint defense at trial. They argued that their shelter is a place for sick and dying cats and that they gave cat owners an option instead of euthanizing. Each was eventually convicted of 24 counts of cruelty against companion animals.

{¶7} Appellants raise the same four assignments of error:

{¶8} "[1.] Prosecutorial misconduct deprived the defendant-appellant of his right to Due Process of Law and a fair trial as guaranteed by the 14th Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of the State of Ohio.

{¶9} "[2.] The trial court abused its discretion and deprived the Defendant of his right to due process of law and his right to a fair trial as guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Ohio Constitution.

{¶10} "[3.] The trial court erred and abused its discretion when it suppressed Defendant's evidence, depriving Defendant of all demonstrative evidence and expert testimony that would counter the demonstrative evidence and expert testimony presented by the State, thus violating the Defendant's right to Due Process and to Confront the Witnesses against him, in violation of Amendments Six and Fourteen to the United States Constitution.

{¶11} "[4.] The trial court erred to the prejudice of the Defendant by permitting the misconduct of the prosecutors to corrupt the framework within which the trial proceeded in a manner that cannot be deemed harmless."

**{¶12}** Appellants' first assigned error claims the denial of due process based on prosecutorial misconduct. They contend they were unable to defend the charges because the state intentionally denied them prompt access to the seized cats, and because the condition of the animals was in flux, prompt access was critical to defending the charges.

**{¶13}** The Due Process Clause affords an accused a meaningful opportunity to present a complete defense, including the preservation of and access to exculpatory evidence. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). As argued, the Due Process Clause protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or in bad faith destroys potentially useful evidence. *Id.*

**{¶14}** We review constitutional questions de novo because they are questions of law. *State v. Burgette,* 4th Dist. Athens No. 13CA50, 2014-Ohio-3483, ¶10; *Krusling v. Ohio Bd. of Pharmacy,* 12th Dist. Clermont No. CA2012-03-023, 2012-Ohio-5356, 981 N.E.2d 320, ¶ 9.

**{¶15}** "The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The defense must prove a denial of due process. *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991).

**{¶16}** To establish the evidence is materially exculpatory, its exculpatory value must be apparent *before* the evidence is destroyed and be unique in that the defendant would be unable to obtain comparable evidence by other reasonably available means.

4

*State v. Smoot*, 2d Dist. Montgomery No. 26297, 2015-Ohio-2717, 38 N.E.3d 1094, ¶49 citing *Trombetta*, *supra*, at 489. For example, the exculpatory nature of the state's suppression of a co-defendant's confession is apparent and constitutes a violation of the right to due process regardless of the good or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**{¶17}** On the other hand, however, the exculpatory nature of semen swabs was *not* apparent when a defendant claimed the police failure to preserve the swabs *could potentially* establish his innocence. *Youngblood, supra,* at 58. Thus, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful* evidence does not constitute a denial of due process of law." (Emphasis added.) *Id.*

**{¶18}** Here, appellants were allegedly denied access to and evidence of the condition of the cats during the state's seven-week delay in charging them. They also claim they were intentionally denied access to the cats and that their discovery requests made after the state filed charges against them were ignored. As a result, appellants claim they were unable to defend the charges and prove the cats were in a better condition than alleged.

**{¶19}** Appellants assert the state has failed to preserve *potentially useful* evidence. Thus, they must show bad faith on the part of the prosecution. *Id.; State v. Geeslin,* 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶15. "When evidence is only potentially exculpatory, its destruction does not constitute a due process violation if police act in good faith and the evidence is handled '* * * in accord with their normal

5

practice.'"  *State v. Rains*, 135 Ohio App.3d 547, 553, 735 N.E.2d 1 (1999), citing *Youngblood, supra*, at 56.

**{¶20}** Bad faith in this context means, ""a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another.""" (Citations omitted.)  *State v. Smith,* 2nd Dist. Montgomery. No. 20247, 2005-Ohio-1374, 2005 WL 678933, ¶7.

**{¶21}** Appellants fail to show evidence of bad faith.  They were initially charged via complaint with 25 counts of cruelty to companion animals on February 14, 2017. Appellants' counsel first filed a written demand for discovery on February 27, 2017, which is captioned Entry of Appearance, Plea, and Discovery Demand.  The body of the motion does not mention discovery and does not seek access to the cats.

**{¶22}** Thereafter, on March 6, 2017, appellants filed another demand for discovery in which they sought to secure "documents and Tangible objects, including * * * [a]ny evidence favorable to the defendant, including all seized cats * * * placed for adoption and the dates they were placed for adoption."  This filing also does not request an opportunity to examine the cats.

**{¶23}** Appellants then jointly moved the court in limine to limit evidence of the condition of the seized cats to the time of their removal and for an order compelling the state to respond to discovery.  In this May 2017 motion, appellants raise for the first time their request to see and inspect the cats.  They claim the prosecution has refused to allow them to examine the cats for more than six months.  In support, appellants attach a photocopy of the affidavit of Lee Nester, the Executive Director of the Lake County

6

Humane Society, in which Nester states that "visitation" with the cats would be disruptive to the cats' care as well as to the operation of the facility. The original Nester affidavit was evidently filed with the U.S. District Court for the Northern District of Ohio, Eastern Division in a federal lawsuit filed by Brown and his co-defendants against the LCHS and others after the charges in this case were filed. We, however, are not privy to these federal pleadings.

{¶24} In its opposition, the state counters appellants' allegations and states that law enforcement officers seized 157 live cats and four dead animals on November 28, 2016 and December 2, 2016 from Caroline's. And on December 20, 2016, a defense investigator was provided access to the animals and permitted to see and photograph the seized cats. This access was granted to appellants' representative before the charges against them were filed. The state also denied appellants' contention that the animals were no longer available for inspection. It did, however, advise the court that most of the animals' conditions had dramatically improved since removal.

{¶25} The trial court issued a general entry granting appellants' motion for discovery without an order compelling discovery. Appellants filed a second motion to compel discovery seeking all records regarding the cats and complaining that defense counsel had yet to receive all the requested records. This motion to compel makes no mention of a request to inspect the cats or an ongoing denied access to examine the animals.

{¶26} Appellants' motions to compel and limine were heard at the July 31, 2017 final pretrial, two days before jury trial commenced. During the pretrial, the state points out that the defense representative was provided access to the animals in December of

7

2016, and defense counsel agreed that their photographer was granted access. The state also denies blocking any defense efforts to examine the cats.

{¶27} Defense counsel argued that Ellen Distler attempted to see the cats and was turned away by the LCHS. The state countered that there was no defense request to have an expert examine them. The state also indicates that although it would not permit appellants' friends to "drop in" and visit the animals, it would have complied with a formal request for an expert to examine them. The defendants' request in the federal case was for "visitation" with the animals, not for a veterinarian to examine them.

{¶28} Sandra Robertson, the prosecuting law firm's office manager, testified that it never received a request from the defendants to have the cats examined. She likewise confirmed that appellants' counsel never called or wrote for help in accessing the veterinary records in this case.

{¶29} Accordingly, appellants fail to show they were ever denied the opportunity to have the cats examined. Appellants likewise fail to show the state acted in bad faith in denying their request to visit the animals or in destroying evidence. Further, they do not claim that the state acted in bad faith by providing the animals the necessary nutrition and medical attention or that this constitutes anything other than "normal procedures" after animals are seized in connection with animal abuse charges.

{¶30} The Sixth District Court of Appeals addressed a comparable argument and held that the state's decision to euthanize the dogs that were the subject of the possession of dogs used for dog fighting charges in that case did not establish willful, bad faith destruction of evidence. *State v. Jones,* 6th Dist. Lucas No. L-00-1231, 2003-Ohio-219, ¶82. Instead, the animals were euthanized to save money. The *Jones* court also held

8

that evidence of the dogs' conditions at the time they were seized was preserved via treatment records and videos taken during the dogs' examinations. *Id.*

**{¶31}** Here, as in *Jones*, there was ample evidence of the animals' conditions at the time they were seized based on the veterinarian records as well photographs of each cat. Thus, appellants' first assigned error lacks merit and is overruled.

**{¶32}** We address appellants' fourth assigned error next and out of order because it is closely related to their first. Here, appellants assert structural error and claim their trial was fundamentally unfair in light of the prosecution's misconduct in denying them timely access to the cats. Appellants claim that the prosecution "constructed" this criminal case based on misrepresentations and manipulations of the trial court and jury. We disagree.

**{¶33}** As for the first aspect of their argument, appellants claim the state had an obligation under Crim.R. 16(B)(3) to provide them access to the cats as "tangible things."

**{¶34}** Crim. R. 16(B), *Discovery: Right to Copy or Photograph,* states:

**{¶35}** "*Upon receipt of a written demand for discovery by the defendant*, * * * the prosecuting attorney shall provide copies or photographs, or *permit counsel for the defendant to copy or photograph*, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:

**{¶36}** "* * *

9

**{¶37}** "(3) Subject to divisions (D)(4) and (E) of this rule, all laboratory or hospital reports, books, papers, documents, photographs, *tangible objects*, buildings, or places;

**{¶38}** "(4) Subject to division (D)(4) and (E) of this rule, results of physical or mental examinations, experiments or scientific tests;

**{¶39}** "(5) Any evidence favorable to the defendant and material to guilt or punishment* * *." (Emphasis added.)

**{¶40}** As stated previously, appellants' representative was granted access to the animals within a month after their seizure and was permitted to photograph the cats. At no time prior to this did they serve a written demand for discovery. Thus, Crim.R. 16(B)(3) was not violated. Appellants were not denied access to the animals for an expert to conduct a medical examination.

**{¶41}** Although appellants' written motions indicate a request to inspect "tangible things," they never filed a motion seeking access to the cats to secure an expert examination. Instead, counsel explained that Brown's friend Lisa Fiorello, a volunteer at the shelter, informally went to visit the cats, but was turned away. Ellen Distler also went to LCHS to check on the animals but was also turned away. There was nothing presented that either of these individuals were qualified to testify to rebut the charges.

**{¶42}** We also disagree with the second aspect of appellants' fourth assigned error, which claims the LCHS "constructed" these criminal charges against them based on factual misrepresentations and manipulations of the trial court and jury. This allegation is also based on the claim that the state denied them access to the cats to preserve and present a one-sided case against them. However, appellants made no request, formal

10

or otherwise, to have an expert physically examine the cats, and as such, the state had no obligation to schedule one.

{¶43} Accordingly, appellants' arguments lack merit, and their fourth assigned error is overruled.

{¶44} In their second assignment of error appellants claim the trial court abused its discretion in disallowing them to present evidence showing the prosecution's bias. They claim they were denied the constitutional right to confront their accusers as a result. In June of 2017, the state moved in limine to exclude, among other things, evidence at trial about a federal lawsuit that appellants filed against the LCHS and its counsel. And based on the voluminous and derogatory allegations in the federal suit, the state likewise moved the trial court to order appellants to provide written notice of their intent to use extrinsic evidence of alleged prior bad acts to allow the parties to prepare for trial.

{¶45} The jury trial was scheduled to commence August 2, 2017 before an appointed judge.

{¶46} In response to the state's motion, in early July 2017, appellants filed a motion in limine moving the court to allow the testimony of four individuals, who allegedly had their pets wrongfully removed by LCHS and subsequently sold or euthanized. Appellants sought to introduce this testimony to demonstrate LCHS's pattern of filing false charges and threats of prosecution to extort money and pets from Lake County pet owners. Appellants claimed this evidence would show "a motive for the state's witnesses to lie," and that the state's witnesses should not be believed because "they are part of a 'say or do anything' extortion machine that generates money from false animal abuse/neglect prosecutions." Appellants also claim this evidence would have shown that

the prosecution was designed to eliminate Caroline's as LCHS's main competitor and to deplete its resources for the charged expenses associated with the seized animals.

{¶47} The trial court denied appellants' motion and granted the state's motion in limine.

{¶48} The trial court's decisions granting the state's motion and overruling appellants' is a preliminary order precluding certain questioning at trial until the trial court "can determine from the total circumstances of the case whether the evidence is admissible." *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986). A trial court may change its ruling on disputed evidence based on the evidence presented at trial. *Defiance v. Kretz,* 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991).

{¶49} Because the ruling on a motion in limine is interlocutory and sets forth the court's anticipatory treatment of the issue at trial, the ruling on the motion does not preserve the record on appeal. Instead, the claimed error must be preserved by an objection, proffer, or ruling on the record "when the issue is actually reached and the context is developed at trial." *Grubb,* supra, at 203. Thus, a party temporarily precluded from introducing evidence via a ruling in limine must proffer testimony at trial to enable the court to make its final admissibility determination in the context of trial. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶47. And absent a proffer, a party cannot demonstrate prejudice and the argument is not preserved for appeal. *Id.*; *Krosky v. Ohio Edison Co.,* 20 Ohio App.3d 10, 15, 484 N.E.2d 704, 709 (9th Dist.1984); *Sanders v. Fridd,* 10th Dist. Franklin No. 12AP-688, 2013-Ohio-4338, 998 N.E.2d 526, ¶45; *Witzmann v. Adam,* 2d Dist. Montgomery No. 23352, 2011-Ohio-379, 2011 WL 322642, ¶25.

12

**{¶50}** Here*,* appellants did not proffer the disputed testimony during trial. Thus, they cannot demonstrate prejudice and this argument is not preserved for appeal. *Id.*

**{¶51}** Moreover, because appellants did not request a *final* admissibility determination, there is nothing for this court to review. It was appellants' duty to raise the issue in the context of trial, not the trial court's. Appellants alone chose not to raise the issue, inform of its *then* intent to call the witnesses, or proffer. This decision was theirs to make and can range from sound trial strategy to ineffective assistance, which is not something capable of determination on direct appeal. Plain error is therefore neither applicable nor established. Crim.R. 52(B) (plain error or defects affecting substantial rights may be noticed although not brought to the attention of the trial court). Although it should not need to be said, the dissent compels a pronouncement: It is not error for a trial court not to admit testimony not elicited from witnesses not called.

**{¶52}** Accordingly, appellants' second assigned error lacks merit.

**{¶53}** Appellants' third assigned error contends the trial court abused its discretion in not permitting them to present two videos of the cats taken days before their seizure to demonstrate their condition was better than alleged by the prosecution. They also claim the trial court improperly precluded their proposed expert witness, Anthony Fiorello, from testifying about sterilization and contamination at Caroline's.

**{¶54}** We review a court's decision regarding the admission of evidence for an abuse of discretion. *O'Brien v. Angley,* 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 407 N.E.2d 490 (1980) ; *Proctor v. NJR Properties, L.L.C.,* 175 Ohio App.3d 378, 2008-Ohio-745, 887 N.E.2d 376, ¶14.

13

{¶55} "'[T]he term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record.' * * * [A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' * * *When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Ivancic v. Enos,* 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70.

{¶56} The trial court's June 2017 scheduling order governs trial deadlines and disclosure of evidence and states in part: "all documents and exhibits must be marked for identification purposes and shared with opposing counsel prior to trial. * * * Failure to do so may result in said documents and exhibits not being admitted into evidence. * * * [A] list of all exhibits and witnesses shall be submitted to the court and opposing counsel at least seven days (7) prior to trial date. The lists will be reviewed at the final pretrial * * *."

{¶57} As for the video of the cats having Thanksgiving dinner and the video of the cats just prior to the seizure, defense counsel advised the court that he wished to present both videos on the third day of trial. The state objected because it was not given copies of the videos before trial commenced. The prosecutor explained that it had never watched the videos, had already presented its case, dismissed its witnesses, and rested. The trial court sustained the state's objection.

14

{¶58} The trial court's decision excluding the videos is consistent with its order governing trial and comports with reason and the record. Thus, we find no abuse of discretion.

{¶59} Notwithstanding the court's exclusion of the videos, appellants were permitted to elicit testimony from their witnesses consistent with what they claim the video depicts. For example, Distler testified that each cat was given turkey and that not all of the cats were sneezing. Rosemarie Wyne, a cat volunteer, testified that although some of the cats could be seen sneezing in the video, not all of them were sneezing. Further, and as pointed out by the state, none of the witnesses who testified about the cat's Thanksgiving dinner identified the cats in the video as the specific cats listed by name in the criminal charges.

{¶60} As for the trial court's exclusion of Anthony Fiorello's proposed expert testimony, we likewise find no abuse of discretion. Appellants attempted to qualify Fiorello as an expert during trial, but the state objected because appellants had not provided an expert report before trial in compliance with Crim.R. 16(K). The trial court sustained the state's objection.

{¶61} As stated, the trial court issued a detailed order governing the trial, which included a directive that both sides present its list of exhibits and witnesses to the court and opposing counsel seven days before trial. Appellants did not comply with this directive since Fiorello was not on their list of proposed witnesses.

{¶62} Moreover, Crim.R. 16(K) dictates that each side shall provide its experts' reports at least 21 days before trial, subject to modification by the court for good cause.

Thus, the trial court did not abuse its discretion in excluding Fiorello's testimony because appellants also did not provide the necessary report in advance of trial.

{¶63} Appellants' third assigned error lacks merit in its entirety, and the trial court's decision is affirmed.

TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶64} I respectfully dissent from the majority's decision to affirm the convictions of the appellants. Since there were serious procedural defects in relation to the admission of evidence at trial, it cannot be said that the appellants were provided with due process or a fair opportunity to present their defense. As the trial court excluded the admission of relevant and extensive testimony that could have created reasonable doubt, this matter should be remanded for a new trial.

{¶65} The critical issue in this case arises from the trial court's dismissive denial of the appellants' request to present evidence regarding the Lake County Humane Society's alleged improper conduct in removing animals for baseless reasons and threatening prosecution for financial gain, including money received for the care and sale of the animals. While this is a serious allegation that could have altered the outcome of the trial, the majority declines to even address the merits of the assigned error. Instead, it holds solely that the failure to proffer the disputed testimony at trial resulted in waiver of

16

this issue on appeal. While it is accurate that failure to perform a proffer at trial has been construed as waiver, courts have still considered the merits of the alleged error, albeit under a plain error standard of review. *See State v. Mobarak*, 2017-Ohio-7999, 98 N.E.3d 1023, ¶ 23 (10th Dist.); *State v. Tyra*, 2d Dist. Montgomery No. 27040, 2017-Ohio-313, ¶ 28-29; *State v. Ryan*, 5th Dist. Delaware No. 18 CAA 01 0011, 2018-Ohio-4739, ¶ 29-31. Plain error applies in cases where there is a deviation from a legal rule which constitutes an obvious defect in the proceedings and affects a defendant's "substantial rights." *State v. Jevnikar,* 11th Dist. Lake Nos. 2016-L-006 and 2016-L-007, 2016-Ohio-8113, ¶ 16. While the majority cites case law in support of its contention that, absent a proffer, an argument regarding admissibility of evidence raised in a motion in limine is not preserved for appeal, each one of these opinions involves a civil matter and, thus, fails to take into account the Crim.R. 52(B) plain error standard. They carry no weight in determining whether this court should consider the merits of the appellants' argument. The majority's repeated statements that the appellants' arguments were not preserved for appeal do not make it so; such statements are contrary to the applicable and relevant authority cited above.

{¶66} Here, in their defense, the appellants set forth a detailed explanation of why the testimony of several witnesses was necessary to show that the main witnesses for the State, which were related to LCHS, had motivation to provide dishonest or inaccurate testimony. This was made clear in the motion in limine. As they allege in their brief, the testimony presented would have shown that LCHS was acquiring money through "reimbursement" for expenses from caring for seized animals and also that it wanted to destroy their shelter's reputation to eliminate its "largest competitor for charitable

17

donations." While it is likely that a proffer would have been a stronger strategy to clearly establish these contentions on the record at trial, the purpose of Crim.R. 52(B) is apparently disregarded by the majority. What would be the purpose of this rule if not to allow this court to consider defects in the lower court proceedings even though they were not properly raised by counsel? This rule serves to allow defendants fair and equitable results in criminal proceedings even if counsel fails to call a potential error to the court's attention.

{¶67} The appellants relied on this testimony to demonstrate that the charges against them were based on false allegations. Without this testimony, the only way for the appellants to prove their defense would be to ask questions on cross-examination and rely on the slim possibility that a dishonest witness might admit to such allegations. They were impeded even in this ability, however, since the trial court did not allow questions on cross-examination relating to the allegedly improper scheme. For example, the court sustained an objection to a question asked by appellants' counsel regarding why the cats were removed from the appellants' facility around the time when the largest yearly charitable donations are made. The appellants were, then, severely limited in their ability to defend themselves.

{¶68} Evid.R. 616(A) provides: "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." This was the type of evidence that the appellants sought to admit. Evidence of bias should be permitted when it is relevant to show a motive to misrepresent testimony and would not mislead the jury. *State v. Kolb*, 7th Dist. Mahoning No. 07 MA 80, 2008-Ohio-5048, ¶ 17-18. Given the foregoing, the motive to misrepresent

18

testimony is evident from the allegations made by appellants and there is no reason why a jury would not be able to fairly consider and weigh the testimony of all witnesses to determine their credibility.

**{¶69}** While such evidence is properly admissible, the lower court denied the appellants' motion on the ground that "this criminal case is not the forum for the defense to seek to establish a sweeping conspiracy." This does not address the issue of whether such testimony was reasonably permitted as evidence of bias. Furthermore, if the concerns alleged by appellants were uncovered in a subsequent civil suit, this would not remedy the specific concerns that arise from a criminal prosecution. Appellants, who ran a shelter that cared for cats suffering from illnesses which often prevented them from being adopted into loving families, were obviously gravely impacted by these convictions. They not only hurt appellants' reputation in the community but the terms of their probation limited the types of animal care facilities in which they may work or operate. The ability to bring a civil suit would likely be of little relief to the appellants in relation to the reputation-damaging crimes of which they have been convicted.

**{¶70}** "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Such right was denied to appellants by the trial court.

**{¶71}** While the majority derisively states that this judge's opinion calls for the pronouncement that "it is not error for a trial court not to admit testimony not elicited from witnesses not called," this entirely ignores and mischaracterizes the extensive analysis

contained in this dissenting opinion. It was more than evident from the trial court's ruling on the motion in limine that it outright refused to permit any testimony on LCHS's ulterior motives in this case and others. This ruling was only reinforced when questions relating to this issue were prohibited in cross-examination. The error by the trial court was in its repeated denial of any opportunity to present evidence, in any manner, of a defense that unquestionably could have altered the result of the trial. The foregoing statement made by the majority is simply a means to dismissively avoid addressing the merits of the appellants' arguments. It **is** plain error for a trial court to exclude testimony that could have been elicited from a witness who the trial court <u>should</u> have allowed to be called, but <u>erroneously prevented</u> such testimony.

{¶72} For the foregoing reasons, the appellants were unable to receive a fair trial at which the jury was able to hear their defense prior to reaching its verdict. For this reason, I respectfully dissent.